UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM and ALYSSA JOHNSON-ESTELLE,

    Plaintiff,

v.

MEIJER, INC., et al.

    Defendants.

Case No. 24-11469
Honorable Laurie J. Michelson

---

**ORDER DENYING PLAINTIFFS' MOTION FOR AN ADVERSE INFERENCE [21]**

---

On June 4, 2024, Plaintiffs Adam and Alyssa Johnson-Estelle filed this lawsuit against Meijer, Inc., and two of its employees, alleging race discrimination in violation of Title II of the Civil Rights Act of 1964 and Michigan's Elliot-Larsen Civil Rights Act. (ECF No. 1.) They allege that on March 29, 2024, they visited a Meijer supermarket in Chesterfield, Michigan. (*Id.* at PageID.3–4.) While Plaintiffs were shopping, Meijer employee Sandra Matz saw them and thought they resembled a couple who had shoplifted at the store the day prior. (ECF No. 21, PageID.84.) Plaintiffs say that Matz then proceeded to follow them through the store. (*Id.*)

While they were scanning their items at self-checkout, Plaintiffs say that Adam accidently scanned an item twice. (*Id.* at PageID.91.) So he "waved toward the employee monitoring the self-checkout to ask for assistance in removing the second charge." (*Id.*) But, Adam says, instead of someone coming to help him, a Meijer employee "approached him and his wife and cornered them." (*Id.* (citation omitted).)

The Meijer employee then questioned Plaintiffs while comparing them to a photo she had on her phone of the shoplifters from the day before. (*Id*. at PageID.92.) After denying all accusations of stealing, Plaintiffs spoke with a store supervisor. (*Id*.) According to Plaintiffs, the supervisor apologized for the disturbance, admitting that other than being African American, the couple in the photograph did not resemble Plaintiffs. (*Id*.) Plaintiffs were then allowed to pay for their items and leave. (*Id*.)

The exchange was caught on the store's surveillance video and was reviewed by Asset Protection Team Leader David Halajian the following day. (*Id*. at PageID.90.) According to Halajian, Meijer has a policy to preserve video footage "anytime there's an incident on the property." (*Id*. at PageID.259.) But while Halajian produced a written report of the interaction (*see id*. at PageID.321–322) he did not save the footage, claiming that he thought Matz had saved it (*id*. at PageID.276–277). Ultimately, Meijer only produced two screenshots from the video footage which show (1) Plaintiffs at the register and (2) Plaintiffs exiting the store. (ECF No. 23-4; ECF No. 23-5.)

Now before the Court is Plaintiffs' motion for an adverse inference instruction given Meijer's "failure to ensure that the video evidence was preserved" in anticipation of litigation, (ECF No. 21.) Plaintiffs contends that this is spoliation of evidence under Federal Rule of Civil Procedure 37(e). (*Id*.) Defendants oppose the motion. (ECF No. 23.) The motion can be decided on this briefing. *See* Mich. L.R. 7.1(f).

2

I.

Spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004). Federal Rule of Civil Procedure Rule 37(e) prescribes the remedy for spoliation of evidence. Under that rule, when electronic information—like video footage—is lost "because a party failed to take reasonable steps to preserve it . . . with the intent to deprive another party of the information's use in the litigation," the Court "may . . . instruct the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2)(B).

With Rule 37(e) as the backdrop, the Sixth Circuit has articulated a three-part test that a party seeking an adverse inference must satisfy. They must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to a party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)). It is "the Plaintiff's burden to establish [Defendant's] culpable destruction of evidence—not [Defendant's] burden to affirmatively defend its handling of [the evidence]." *Keathley v. Grange Ins. Co. of Mich.*, No. 15-11888, 2018 U.S. Dist. LEXIS 46205, at *18 (E.D. Mich. Mar. 21, 2018).

## II.

Start with the first prong—whether Meijer had a duty to preserve the video footage. "An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation." *Beaven*, 622 F.3d at 553–54 (citation modified).

Here, Plaintiffs say that "[t]he entire exchange was caught on surveillance video tape and was available for review the next day" and per "Meijers' asset protection procedures" the video should have been saved in anticipation of litigation. (ECF No. 21, PageID.84.) They highlight that, "given its post-incident investigations, which included a review of the video and an effort to document some of the events," Meijer knew that the video was relevant to future litigation. (*Id.* at PageID.95.) For its part, Meijer disputes that the "entire exchange" was caught on video (ECF No. 23, PageID.415) but otherwise does not dispute that it failed to preserve the video.

There is no suggestion that the Plaintiffs threatened litigation at the time they left the store or the next day when the footage was reviewed. Still, the Court finds that Meijer's actions following this incident suggest that it knew or "should have known" that the footage could be relevant to future litigation. *Beaven*, 622 F.3d at 553–54. Following the incident, a Meijer employee, Halajian, filed an incident report (ECF No. 23-3) and spoke with both the store's director and regional asset protection manager about the incident (ECF No. 21, PageID.271–272). He also reviewed the video of Plaintiffs standing at the self-checkout lanes. (*Id.* at PageID.276.) These actions are "consistent with anticipating potential litigation." *See Guess v. TJX Co.,*

*Inc.*, No. 24-cv-30, 2025 U.S. Dist. LEXIS 81094, at *8 (E.D. Tenn. Apr. 29, 2025). Likewise, "courts have found a duty to preserve in instances where, as here, an incident report and internal preservation policy put the party on ample notice of future litigation." *Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750, 753 (M.D. Tenn. 2021) (collecting cases); *see also Stocker*, 705 F.3d at 235 (finding that "IRS internal policy manual" created an obligation for defendant to preserve evidence). And "[o]nce the duty to preserve attaches, a party must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Owner-Operator Indep. Drivers Ass'n v. Comerica Bank*, 860 F. Supp. 2d 519, 538 (S.D. Ohio 2012) (internal quotation marks omitted). So here, Meijer should have maintained a copy of the video for a longer period of time and not allowed it to be overwritten.

Meijer's argument that it does not believe the entire exchange was caught on video is unavailing: At least some of it was captured and thus likely to be helpful in the litigation. *See* (ECF No. 21, PageID.279 ("Q. So essentially, what you're telling us there, from what you see on the video, is the two guests, which are my client[s], they're going to the self-checkout, and they begin their transaction; is that right? A. Yes.")); *Guess*, 2025 U.S. Dist. LEXIS 81094, at *8–9 (finding that "simply because a recording did not capture" all of the relevant incident "does not mean that the recordings did not capture information that could have been relevant to litigation, including conditions in the store at the time [of the incident] or how store employees reacted"). So Plaintiffs satisfy the first prong.

5

The same is not true of the second prong—whether Meijer or its employees destroyed the video footage with a "culpable state of mind." Fed. R. Civ. P. 37(e)(2). Establishing a "culpable state of mind" is a hard task. Under Rule 37(e)(2), "[a] showing of negligence or even gross negligence will not do the trick;" instead, Plaintiffs must show that Meijer acted with an "intent to deprive" Plaintiffs of the video footage. *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (finding that defendant did not act with a culpable state of mind because plaintiff could not show that defendant intentionally "destroyed the records . . . after it was put on notice of litigation"). As the 2015 Advisory Committee Notes to Rule 37 explain:

> [A] party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

Here, Plaintiffs fail to establish that Meijer intentionally destroyed the video footage of the incident, let alone that it did so to preclude Plaintiffs from having it. Halajian testified, without contradiction, that he neglected to save the video because he thought another employee, Matz, saved it. (ECF No. 21, PageID.276–277.) But she had not. And so the video was "routinely overwritten by Meijer's system" thirty days after the incident—more than a month before Plaintiffs filed this lawsuit. (ECF No. 23, PageID.415.) At best, this inadvertent failure to preserve the video footage was negligent. But it was not intentional. And it does not warrant an adverse inference instruction.

Moreover, "a proper spoliation sanction should serve both fairness and punitive functions." *Adkins v. Wolever* (*Adkins I*), 554 F.3d 650, 652 (6th Cir. 2009) (en banc). Here, in addition to Meijer's low degree of fault, Plaintiffs are not left without an ability to establish their claims. There are still photos of some of the interaction and eyewitnesses (Meijer employees and shoppers) who can testify to what they saw.

### III.

Thus, for these reasons, the Court DENIES Plaintiffs' motion for an adverse inference (ECF No. 21).

SO ORDERED.

Dated: August 14, 2025

                                           s/Laurie J. Michelson
                                           LAURIE J. MICHELSON
                                           UNITED STATES DISTRICT JUDGE